# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY PROVO, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. CIV-17-57-D |
| BOLT EXPRESS, LLC, and<br>ELIAS EL-CHAAR, | ) |
|     Defendants. | ) |

## ORDER

Before the Court is Defendants' Partial Motion for Summary Judgment [Doc. No. 41], filed pursuant to FED. R. CIV. P. 56. Plaintiff responded in opposition [Doc. No. 48], and Defendants replied [Doc. No. 49]. The matter is fully briefed and at issue.

## BACKGROUND

This case stems from a motor vehicle accident on August 19, 2016, between Plaintiff and Defendant Elias El-Chaar ("El-Chaar"). On that date, Plaintiff, an employee of Regional Enterprises, LLC ("Regional Enterprises"), was hauling jet fuel in a tanker-trailer westbound on Interstate-40 in Crittenden County, Arkansas. El-Chaar, driving for Bolt Express, LLC ("Bolt Express"), rear-ended the trailer that Plaintiff was pulling. Plaintiff alleges that El-Chaar was negligent and was acting within the scope of his employment at the time of the accident. As part of his damages, Plaintiff asserts a lost wage claim[1] of

---

[1] In addition, Plaintiff asserts damages for past and future medical expenses, past and future pain and suffering, and emotional distress. Defendants' motion only challenges the damages for lost wages.

$200,000.00[2]. *See* Joint Status Report [Doc. No. 13 at ¶ 4(a)]. Defendants contend that Plaintiff's assertion of lost wages is devoid of any evidentiary support. Plaintiff maintains that his testimony, his income information and the testimony of Willie Russell, owner of Regional Enterprises, supports his claim for lost wages.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (*quoting* FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corporate Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-671 (10th Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be

---

[2] Defendants do not dispute the $2,500.00 to $3,500.00 in earnings that Plaintiff lost the week following the accident. Defs.' Partial Mot. for Summ. J. [Doc. No. 41 at n. 2].

admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits or affidavits. *Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

## UNDISPUTED AND MATERIAL FACTS[3]

Plaintiff left Regional Enterprises because he no longer felt "safe" hauling jet fuel after the accident. Pl.'s Dep. [Doc. No. 41-1 at 17-19, 25-27].[4] Consequently, he asserts

---

[3] Plaintiff's brief in opposition does not comply with the Local Court Rules or FED. R. CIV. P. 56. LCvR 56.1(c) requires a brief in opposition to a motion for summary judgment to "begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." LCvR 56.1(c) (emphasis in original). Plaintiff has made no effort to controvert Defendants' statement of material facts. Pursuant to LCvR 56.1(e), all "material facts set forth in the statement of materials facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule." *See also* FED. R. CIV. P. 56(c)(1) and 56(e)(2). Thus, Defendants' material facts, as supported by the evidence of record, are deemed admitted. Further, the three numbered paragraphs offered by Plaintiff as undisputed facts do not materially differ from the facts set forth by Defendants or the evidence of record.

[4] After the accident, Plaintiff hauled diesel fuel one more time, but he asserts that he was almost rear-ended. He called Jason Russell the next day and resigned. Pl.'s Dep. [Doc. No. 41-1 at 25].

(1) that he makes less money as a driver for YRC Freight than he did as a driver for Regional Enterprises; and (2) that he lost the potential to become an owner-operator for Regional Associates, Inc. ("Regional Associates")[5], a position he contends would have provided him with earnings of $150,000.00 a year. *Id.* at 28, 30.

A. **Regional Associates and Regional Enterprises**

Willie Russell founded Regional Associates in 1993. Ward's Dep. [Doc. No. 41-3 at 7-8]; W. Russell's Dep. [Doc. No. 41-4]. He later sold his share of the company to his son, Jason Russell. Ward's Dep. [Doc. No. 41-3 at 7]. Regional Associates hauls fuel, primarily jet fuel, to military bases across the United States. J. Russell's Dep. [Doc. No. 41-2 at 6-7]; Ward's Dep. [Doc. No. 41-3 at 16, 34]. The company owns 38 trailers. J. Russell's Dep. [Doc. No. 41-2 6]; Ward's Dep. [Doc. No. 41-3 at 8]. Regional Associates does not have any tractor units to pull its trailers. Therefore, it enters lease agreements with other companies[6] or individual owner-operators of tractor units. One such company

---

[5] The Court notes some confusion in the record between Regional Enterprises and Regional Associates. Adding to the confusion, counsel and witnesses in their depositions refer to both companies as "Regional." Plaintiff himself confused the two when he called Jason Russell to resign rather than Willie Russell, owner of Regional Enterprises. Andrea Ward, office manager for Regional Associates, testified in her deposition that drivers often confuse the two companies and also confuse New Dawn Trucking, the sister company for Regional Associates. Ward's Dep. [Doc. No. 41-3 at 16]. Further complicating matters, in 2016, Regional Associates compensated Plaintiff directly, when the truck he was driving for Regional Enterprises was broken down. Ward's Dep. [Doc. No. 41-3 at 14]. The Court has attempted to alleviate some of this confusion in the Facts section of this Order. As an owner-operator for Regional Associates, Plaintiff would no longer be employed by Regional Enterprises, but would purchase his own truck and individually enter a lease with Regional Associates to pull their trailers. J. Russell's Dep. [Doc. No. 41-2 at 13]; Ward's Dep. [Doc. No. 41-3 at 19, 23].

[6] New Dawn Trucking, a sister company of Regional Associates, also provides tractor units

is Regional Enterprises, which Willie Russell owns. J. Russell's Dep. [Doc. No. 41-2 at 7]; W. Russell's Dep. [Doc. No. 41-4 at 8]. Plaintiff drove as an independent contractor for Regional Enterprises. At the time of the accident, Plaintiff was driving a Regional Enterprises' tractor pulling a Regional Associates' trailer. J. Russell's Dep. [Doc. No. 41-2 at 7].

Regional Associates does not employ drivers but leases with companies who do employ drivers or leases with individual owner-operators of tractor units. W. Russell's Dep. [doc. No. 41-4 at 10]. A person has to own his or her own truck to be an owner-operator. W. Russell's Dep. [Doc. No. 41-4 at 10]; Ward's Dep. [Doc. No. 41-3 at 19, 23]; J. Russell's Dep. [Doc. No. 41-2 at 13].

**B.     Subject Accident**

The motor vehicle accident at issue occurred on August 19, 2016, on Interstate-40 in Crittenden County, Arkansas. Plaintiff was driving a tractor unit owned by Regional Enterprises and was pulling a trailer owned by Regional Associates. J. Russell's Dep. [Doc. No. 41-2 at 7]; Accident Report [Doc. No. 41-7]. Following the accident, Plaintiff left the disabled trailer in Arkansas and returned to Oklahoma City in the tractor unit owned by Regional Enterprises. Pl.'s Dep. [Doc. No. 41-1 at 24]. Plaintiff took one week off work after the accident. *Id.* He continued to drive for Regional Enterprises until late

---

to haul Regional Associates' trailers. Plaintiff has worked as a driver for New Dawn Trucking in the past. Ward's Dep. [Doc. No. 41-3 at 8]. It does not appear, however, that Plaintiff has ever been an owner-operator for Regional Associates or that he had entered any agreement to become an owner-operator. Further, there is no evidence of record that Plaintiff ever purchased or obtained financing to purchase a tractor unit.

5

September or early October 2016. W. Russell's Dep. [Doc. No. 41-4 at 25-26].

## C. Plaintiff's Resignation from Regional Enterprises

At some point in late September or early October 2016, while Plaintiff was pulling a trailer for Regional Associates, Plaintiff called Jason Russell and resigned. Pl.'s Dep. [Doc. No. 41-1 at 25, 64]. He made the decision to resign after he perceived that he was almost involved in a similar accident while hauling diesel fuel for Regional Associates. *Id.* at 25, 64. Plaintiff left Regional Enterprises because he no longer felt "safe" hauling fuel after the accident. *Id.* at 17-19. Plaintiff, Jason Russell, Willie Russell and Andrea Ward all testified that Plaintiff would be welcomed back at Regional Enterprises as a company/contract driver or Regional Associates as an owner-operator, if at any point he chose to return. *Id*. at 66; *see also* J. Russell's Dep. [Doc. No. 41-2 at 27]; Ward's Dep. [Doc. No. 41-3 at 23]; W. Russell's Dep. [Doc. No. 41-4 at 9].

## D. Plaintiff's Employment at YRC Freight

While still working for Regional Enterprises, Plaintiff applied for a commercial truck driver position with YRC Freight on September 8, 2016. Pl.'s Employment Application [Doc. No. 41-5 at 4]. In his application, Plaintiff indicated he was leaving "Regional"[7] because "the salary changes from month to month and at this time [I'm] not working at all." *Id.* at 2. He also indicated he was not receiving health insurance. *Id.* Plaintiff further indicated that he had once left "Regional Associates" on or about July 20,

---

[7] Plaintiff consistently lists Regional Associates as his employer or past employer and Jason Russell as his supervisor. He does not list New Dawn Trucking or Regional Enterprises. Based on the other evidence of record, including deposition testimony and Defendants' motion, this appears to be in error.

6

2015, "To go work at Frontier for health insurance." *Id*. at 4.

Andee Garst, YRC Talent Acquisition Coordinator, testified that YRC Freight provides "free health insurance to their employees" and that this "attracts candidates to YRC Freight." Garst's Dep. [Doc. No. 41-8 at 25]. During his phone interview with YRC Freight, Plaintiff indicated he was looking for a job with "[h]ealth insurance and somewhere stable to retire from" and that he disliked the fact that Regional Enterprises did not offer health insurance. YRC Freight Phone Interview Form [Doc. No. 41-9]. Nowhere in YRC Freight's records does Plaintiff assert that he felt unsafe pulling certain types of loads. In fact, YRC Freight requires all job applicants to be HAZMAT certified. Glave's Dep. [Doc. No. 41-10 at 19].

The evidence of record indicates that Plaintiff has been employed with YRC Freight since October 8, 2016. *See* Defs.' Partial Mot. for Summ. J. [Doc. No. 41 at ¶ 28]; YRC Freight Pay Records [Doc. No. 41-13].

E.   **Plaintiff's Assertion of Lost Wages**

Plaintiff asserts that he is earning less at YRC Freight than he did as a contract/company driver for Regional Enterprises. He also contends that he lost the opportunity to become an owner-operator for Regional Associates, a position he asserts has the earning capacity of $150,000.00 per year. Pl's Dep. [Doc. No. 41-1 at 30, 38]. Plaintiff admits that he has no physical impairment that would preclude him from driving for Regional Enterprises or from pulling trailers for Regional Associates. *Id.* at 26, 93. He has not sought psychological or psychiatric care relating to his alleged mental issues with driving a tractor-trailer. *Id*. at 38. Defendants point out, and Plaintiff does not refute, that

Plaintiff has not designated an expert to testify as to his mental or emotional capacity to pull trailers for Regional Associates.[8] Defs.' Partial Mot. for Summ. J. [Doc. No. 41 at ¶ 25]; *see also* Pl.'s Final Witness & Ex. List [Doc. No. 36-1].

Plaintiff was compensated $39,073.14 by Regional Enterprises between January and October 2016. Reg'l Enter. Pay Records [Doc. No. 41-11]. He was also paid $2,739.00 directly by Regional Associates and its sister company. Pl.'s 2016 W-2 [Doc. No. 41-12]. Between October 8, 2016, and October 7, 2017, Plaintiff earned $51,429.30 with YRC Freight. YRC Freight Pay Records [Doc. No. 41-13]. Owners of Regional Associates and Regional Enterprises testified that they could not estimate future earnings at either company because compensation fluctuates significantly. J. Russell's Dep. [Doc. No. 41-2 at 33-34]; W. Russell's Dep. [Doc. No. 41-4 at 16]. Plaintiff agreed. Pl.'s Dep. [Doc. No. 41-1 at 28]. Willie Russell testified in his deposition that he was aware of no owner-operator ever earning $150,000.00 in a year. W. Russell's Dep. [Doc. No. 41-4 at 20].[9]

---

[8] Although Plaintiff has designated Sean Lively, a licensed chiropractor, as an expert, Plaintiff has conceded that his testimony will be limited to the medical records already provided to Defendants. [Doc. Nos. 35, 39-2]. Thus, Defendants' Motion to Strike Plaintiff's Proposed Expert List [Doc. No. 39] will be granted by a separate order.

[9] Plaintiff contends that owner-operators can earn $100,000.00 a year at Regional Enterprises. Pl.'s Resp. [Doc. No. 48 at ¶ 1]. Willie Russell, owner of Regional Enterprises, offered testimony in his deposition on the earning capacity of an owner-operator. He indicated that owner-operators who "really want to drive" could earn $100,000.00 a year. W. Russell's Dep. [Doc. No. 41-4 at 19]. He estimated that the top earning capacity – that is for the "very best drivers" – is around $100,000.00 a year. *Id.* He estimated that the average earning capacity for an owner-operator would be $40,000.000 to $50,000.00 a year. *Id.* He was not aware of any owner-operator ever earning $150,000.00 in a year. *Id.* at 20.

## DISCUSSION AND ANALYSIS

A.  **Choice of Law**

The parties do not dispute the applicable law governing Plaintiff's negligence claim. "A federal court sitting in diversity … must apply the substantive law of the forum state, including its choice of law rules." *Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007). Thus, the Court looks to Oklahoma's choice-of-law rules in determining what law to apply.

Under Oklahoma's choice-of-law rules, the Court must apply the tort law of the state with the most significant relationship to the occurrence and the parties. *Hightower v. Kan. City S. Ry. Co.,* 70 P.3d 835, 842 (Okla. 2003). This test requires the consideration of four factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties occurred. *Id. (internal quotation marks omitted); see also Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974).

The first, second and fourth factors all point to application of Arkansas law. The injury, conduct and the only interaction between Plaintiff and Defendants occurred in Arkansas. The third factor – place of domicile – is not determinative where, as here, multiple states are involved. Therefore, Arkansas law applies because it has the most significant relationship to the occurrence and the parties.

## B. Plaintiff's Assertion of Lost Wages

Plaintiff's wage claim is comprised of two parts: (1) his assertion that he has and will continue to suffer lost wages and earn less as a commercial truck driver for YRC Freight; and (2) his contention that he had the potential to make up to $150,000.00 as an owner-operator at Regional Associates. Under Arkansas law, loss of earnings and loss of earning capacity are separate elements of damage. *Cates v. Brown*, 645 S.W.2d 658, 660 (Ark. 1983); *see also* Arkansas Model Jury Instructions, Civil AMI 2201, 2206 and 2207.

> Briefly stated, damage resulting from loss of earning capacity is the loss of the ability to earn in the future. The impairment of the capacity to earn is the gravamen of the element. It is sometimes confused with permanency of the injury but is a separate element. However, an instruction on this element is normally given only in the event of a permanent injury.

*Cates*, 645 S.W.2d at 660 (internal citations omitted).

Although the evidence may support an award for either element, when both elements are included in the jury instructions, "there is a real danger of a double recovery." *Coleman v. Cathey*, 565 S.W.2d 426, 428 (Ark. 1978); *see also* Note on Use to AMI 2206, 2207.

### 1) Loss of Earnings

An instruction on this element is appropriate where the plaintiff proves he "will lose wages in the future but has sustained no injury which will impair his earning capacity." *Cates*, 645 S.W.2d at 660. Loss of earnings must be proven with reasonable certainty. *Id*. Evidence involving two factors is necessary: (1) the amount of wages lost for some determinable period; and (2) the future period over which wages will be lost. *Id*.

Thus, where there is proof that the plaintiff, at the time of the trial, is still unable to

earn as much as he did before he was injured, an instruction on the loss of future earnings is proper. *Check v. Meredith*, 420 S.W.2d 866, 867 (Ark. 1967); *see also Ishie v. Kelley*, 788 S.W.2d 225, 226 (Ark. 1990) (reversing the trial court for giving AMI 2206 absent adequate evidence of lost past and future profits).

Plaintiff has not put forth sufficient evidence to support his claim that he has made or will make less money at YRC Freight. Plaintiff was compensated $39,073.14 by Regional Enterprises between January and October 2016. Reg'l Enter. Pay Records [Doc. No. 41-11]. He was also paid $2,739.00 directly by Regional Associates and its sister company. Pl.'s 2016 W-2 [Doc. No. 41-12].

Between October 8, 2016, and October 7, 2017, Plaintiff earned $51,429.30 with YRC Freight. YRC Freight Pay Records [Doc. No. 41-13]. Thus, Plaintiff earned $9,600.00 more at YRC Freight than he did at Regional Enterprises and Regional Associates. Plaintiff resigned from Regional Enterprises as the business was approaching its slowest time of the year. W. Russell's Dep. [Doc. No. 41-4 at 16].

Further, owners of Regional Associates and Regional Enterprises testified that they could not estimate future earnings at either company because compensation fluctuates significantly. J. Russell's Dep. [Doc. No. 41-2 at 33-34]; W. Russell's Dep. [Doc. No. 41-4 at 16]. Plaintiff agreed. Pl.'s Dep. [Doc. No. 41-1 at 28].

Willie Russell testified that the average earning capacity for an owner-operator would be $40,000.00 to $50,000.00 a year. W. Russell's Dep. [Doc. No. 41-4 at 19]. In his first year at YRC Freight, Plaintiff earned what an owner-operator would earn in an average year. Although Plaintiff is not required to prove "precisely what he has lost," as

11

the non-moving party he must designate specific facts showing there is an issue for trial. *Davis v. Davis*, 856 S.W.2d 284, 287 (Ark. 1993); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.").

The party claiming damages has the burden of proof. *Christmas v. Raley*, 539 S.W.2d 405, 410 (Ark. 1976). Damages "must be shown with reasonable certainty" as to both their nature and cause. *Jonesboro Coca-Cola Bottling Co. v. Young*, 132 S.W.2d 382, 384 (Ark. 1939). Resorting to "speculation or conjecture" to determine causation is prohibited. *Id. See also Christmas,* 539 S.W.2d at 411. Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

Plaintiff contends that he left Regional Enterprises because he no longer felt "safe" hauling fuel after the accident. Pl.'s Dep. [Doc. No. 41-1 at 17-19]. Although Defendants do not dispute this fact, they contend that the evidence controverts Plaintiff's testimony. In his job application and phone interview with YRC Freight, Plaintiff stated that he was leaving Regional Enterprises/Regional Associates for health insurance, steady pay and retirement stability. Pl.'s Employment Application [Doc. No. 41-5 at 2]; YRC Freight Phone Interview Form [Doc. No. 41-9]. Nowhere in YRC Freight's records does Plaintiff assert that he felt unsafe pulling certain types of loads. In fact, as a condition of Plaintiff's

employment with YRC Freight, he was required to be HAZMAT[10] certified. Glave's Dep. [Doc. No. 41-10 at 19]. Had Plaintiff expressed concerns to YRC Freight about his ability to haul HAZMAT materials, he may have been disqualified as an applicant.

Further, Plaintiff admitted that he could "physically" perform the work as a driver for Regional Enterprises/Regional Associates. Pl.'s Dep. [Doc. No. 41-1 at 26, 93]. Moreover, Plaintiff never sought treatment from a health care provider relating to his alleged mental issues with driving a tractor-trailer hauling fuel. *Id*. at 38. Finally, Plaintiff has not designated an expert to testify as to his mental or emotional capacity to pull trailers for Regional Associates. Defs.' Partial Mot. for Summ. J. [Doc. No. 41 at ¶ 25]; *see also* Pl.'s Final Witness & Ex. List [Doc. No. 36-1].

In an effort to avoid summary judgment, Plaintiff relies on Willie Russell's testimony that owner-operators who "really want to drive" could earn $100,000.00 a year. W. Russell's Dep. [Doc. No. 41-4 at 19]. Mr. Russell estimated that the top earning capacity for the "very best drivers" is around $100,000.00 a year. *Id.* The evidence of record, however, does not support Plaintiff's assertion (1) that he missed the opportunity to become an owner-operator, or (2) that Plaintiff would earn $100,000.00 a year as an

---

[10] The United States Department of Transportation identifies nine classes of hazardous materials. U.S. Dep't of Transportation & Federal Motor Carrier Safety Administration, https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Nine_Classes_of_Hazardous_Materials-4-2013_508CLN.pdf (last visited Feb. 26, 2018). Although Plaintiff asserted in his deposition that after the accident he no longer felt comfortable hauling liquid HAZMAT, he hauls "all kinds of commodities" at YRC Freight and is HAZMAT certified. Pl.'s Dep. [Doc. No. 41-1 at 18]; *see also* Glave's Dep. [Doc. No. 41-10 at 19]. Further, Eric Glave, line haul manager at YRC Freight, identified hazardous materials hauled by YRC Freight drivers, including fireworks, oxygen and corrosives. *Id.*

owner-operator.

Plaintiff, Jason Russell, Willie Russell and Andrea Ward all testified that Plaintiff would be welcomed back at Regional Enterprises as a company/contract driver or Regional Associates as an owner-operator, if at any point he chose to return. Pl.'s Dep. [Doc. No. 41-1 at 66]; J. Russell's Dep. [Doc. No. 41-2 at 27]; Ward's Dep. [Doc. No. 41-3 at 23]; W. Russell's Dep. [Doc. No. 41-4 at 9]. Thus, the opportunity has not been lost.

At the same time, however, it does not appear that Plaintiff was ever an owner-operator for Regional Associates or that he had entered any agreement to become an owner-operator. There is no evidence of record that Plaintiff ever purchased or obtained financing to purchase a tractor unit. To become an owner-operator, he would have to purchase a tractor unit. If he left YRC Freight to become an owner-operator for Regional Associates, he would lose his health insurance. Simply put, Plaintiff has not demonstrated a triable issue regarding whether he would make $100,000.00 a year as an owner-operator.

   2)   *Loss of Earning Capacity*

Loss of earning capacity is recoverable only upon proof that an injury is permanent. *Wheeler v. Bennett*, 849 S.W.2d 952, 955 (Ark. 1993). "A permanent injury is one that deprives the plaintiff of his right to live his life in comfort and ease without added inconvenience or diminution of physical vigor." *Id*. Although the existence of a permanent injury should not be left for the jury to speculate over, proof of this element does not require the same specificity or detail as proof of loss of future wages. *Cates*, 645 S.W.2d at 660. "The reason is that a jury can observe the appearance of the plaintiff, his age and the nature of the injuries which will impair his capacity to earn." *Id.*

Plaintiff contends that his testimony alone is sufficient to present his lost earning capacity claim to the jury. "No hard and fast rule exists by which to test the permanency of injuries and to a degree each case must be examined on its own." *E. Tex. Motor Freight Lines, Inc. v. Freeman*, 713 S.W.2d 456, 460 (Ark. 1986). Indeed, lay testimony without expert corroboration may be sufficient. *Id.* (*citing Bailey v. Bradford*, 423 S.W.2d 565, 567 (Ark. 1968)).

In *Belford v. Humphrey*, the Arkansas Supreme Court drew a distinction between subjective injuries and objective injuries. *Belford v. Humphrey*, 424 S.W.2d 526, 529 (Ark. 1968). The court held that a subjective injury, i.e., one that a nonprofessional could not with reasonable certainty testify would cause future pain and suffering, required expert testimony. *Id.* An objective injury, such as a severed limb, would not require expert testimony prior to submission of the issue of permanency to the jury. *Id.* "Between the two extremes are gray areas in which the issue of permanency becomes a matter of judgment." *Id*. Ultimately, the court found that the evidence justified submission of the issue of permanency of injury to the jury. *Id.* The plaintiff's injuries had persisted for 20 months, her personality had changed, and she was unable to perform certain movements without pain; she was also taking muscle relaxants at the time of trial. *Id.*

In *Freeman*, the plaintiff's injuries were more emotional than physical. *Freeman*, 713 S.W.2d at 460. The plaintiff's daughter testified that since the accident her mother had avoided driving or allowing her grandchildren to ride with her.[11] *Id.* She would make

---

[11] The plaintiff's car was struck from behind by a tractor-trailer. At the time of the accident, the plaintiff was driving and her daughter and grandson were passengers. *Freeman*, 713

15

excuses to keep from driving and was a "total wreck" in the days leading up to a trip. *Id.* The daughter further testified that her mother was paranoid about 18-wheelers driving behind her. *Id.* The court found there was sufficient evidence of permanency to submit the issue to the jury. *Id.*

Likewise, in *Coleman v. Cathey*, the court found there was substantial evidence to support an award for loss of earning capacity. *Coleman v. Cathey*, 565 S.W.2d 426, 428 (Ark. 1978). There the plaintiff allegedly suffered severe injuries to his face, head and eyes of a permanent nature. *Id.* Further, the plaintiff testified that he went to college to become a coach and that he was unable to coach successfully because of the eye injury. *Id.* At the time of the trial, he was working for an insurance company. *Id.* His employment as a coach was terminated after the injury. *Id. See also Wheeler v. Bennett*, 849 S.W.2d 952, 956 (Ark. 1993) (evidence of a permanent back injury was provided by a physician); *Honeycutt v. Walden,* 743 S.W.2d 809, 811 (Ark. 1988) (an ear, nose and throat specialist and orthopedist testified the plaintiff suffered permanent nerve damage, which caused her to drool and slur her words, and that her neck and back problems interfered with her ability to lift, which her work required).

In stark contrast, here Plaintiff is employed as a commercial truck driver. He is still driving, and he is HAZMAT certified. *See* Defs.' Partial Mot. for Summ. J. [Doc. No. 41 at ¶ 28]; YRC Freight Pay Records [Doc. No. 41-13]; Glave's Dep. [Doc. No. 41-10 at 19]. Further, he has acknowledged that he has no physical impairment that would inhibit his

---

S.W.2d at 458.

ability to drive for Regional Associates/Regional Enterprises.[12] Pl.'s Dep. [Doc. No. 41-1 at 26, 93]. He has never sought treatment for any psychological issues related to his ability to haul fuel. Pl's Dep. [Doc. No. 41-1 at 38]. Further, there is no evidence his "fear" of hauling fuel will persist.

Accordingly, the Court concludes that Plaintiff has not presented sufficient evidence of a permanent injury to establish a triable issue and submit Plaintiff's loss of earning capacity claim to the jury. Thus, summary judgment is appropriate.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Partial Motion for Summary Judgment [Doc. No. 41] is GRANTED.

IT IS SO ORDERED this 26th day of February 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[12] The other cases relied upon by Plaintiff and by the Arkansas Supreme Court in *Coleman* concerned verifiable injuries. *See Riddel v. Lyon*, 213 P. 487 (Wash. 1923) (the plaintiff was on foot crossing the street when he was struck by a car); *Miss. Power & Light Co. v. McCormick*, 166 So. 534, 535 (Miss. 1936) (the appellee suffered severe burns that required months of treatment and permanent injuries to her eyes and hands; at the time of the injury, the plaintiff was an accomplished pianist, a piano teacher, and a radio and convention entertainer); *Missouri Pac. R.R. Co. v. Gilbert*, 178 S.W.2d 73 (Ark. 1944) (an action to recover for the death of the plaintiff's husband).